**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHOLANDA MCGILL, | |
| Plaintiff, | 2:14-cv-00137-RCJ-VCF |
| vs. | **ORDER** |
| ROBERT A. MCDONALD, Secretary of Veterans Affairs, | |
| Defendant. | |

This case arises from the Department of Veterans Affairs's ("the VA") alleged violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), as well as various state tort laws. Pending before the Court is a Motion for Partial Dismissal (ECF No. 18) filed by Defendant Robert A. McDonald, Secretary of Veterans Affairs. The Court has considered the Motion along with Plaintiff's Response (ECF No. 20) and Defendant's Reply (ECF No. 24). For the reasons contained herein, the Motion is GRANTED.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Sholanda McGill is a homosexual African-American woman who began employment with the VA on November 22, 2008. (Compl. ¶ 16, ECF No. 1). Plaintiff suffers from fibromyalgia and IBS. (*Id.* ¶ 23). She worked as a respiratory therapist at the VA's hospital in Clark County, Nevada. (*Id.* ¶ 17). In 2010, Plaintiff filed two Equal Employment Opportunity ("EEO") complaints with the VA claiming that she was suffering harassment by two

1

male coworkers based on her sex and her sexual orientation. (*Id.* ¶¶ 21–22). The VA opened an investigation of Plaintiff's claims and temporarily moved Plaintiff to an outpatient facility away from the coworkers who were allegedly harassing her. (*Id.* ¶ 25). Once the investigation was complete, the VA made this temporary position permanent along with an allegedly lower pay grade in order to provide Plaintiff with a non-hostile working environment. (*Id.* ¶ 26).

In July 2012, Plaintiff received an email informing her that she was required to attend a walk-through of a new VA facility where the respiratory therapists would be relocated. (*Id.* ¶ 29). Presumably, this meant that Plaintiff and her past harassers would be working in the same building. Plaintiff informed her supervisors and the VA's local human resources office about her fear that the move would return her to a hostile working environment. (*Id.* ¶ 31). Plaintiff claims that here concerns were unaddressed. (*Id.* ¶ 32). Despite three separate attempts to report to the new facility, Plaintiff could not overcome the "physical[] and mental[] afflict[ion]" that she allegedly experienced at the thought of working in the same building with her former harassers. (*Id.* ¶ 34). This distress allegedly caused her existing conditions to worsen and also resulted in Plaintiff's treatment for depression.

Plaintiff filed another EEO complaint and requested that she be allowed to work at a facility apart from the other respiratory therapist. The parties failed to reach a mutually agreeable solution, and on December 13, 2012, Plaintiff resigned. (*Id.* ¶¶ 41–42). Plaintiff believes that the VA's failure to accommodate her request to work elsewhere at her same pay grade was based on the EEO complaints she filed in 2010. She also claims that she was disparately treated because of her sex, sexual orientation, and disability. (*Id.* ¶ 46).

Plaintiff's Complaint contains ten causes of action: (1) discrimination based on sex; (2) discrimination based on sexual orientation; (3) discrimination based on disability; (4) public

policy tort; (5) respondeat superior; (6) negligent hiring, supervision, and training of employees; (7) retaliation; (8) constructive discharge; (9) discrimination pursuant to state law; and (10) intentional infliction of emotional distress.  Plaintiff has voluntarily agreed to withdraw the causes of action for the public policy tort, respondeat superior, and discrimination arising under state law. (Resp. 16, ECF No. 20).

Defendant moves for dismissal pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction claiming that Plaintiff failed to exhaust administrative remedies prior to filing this lawsuit.  Alternatively, Defendant moves for dismissal under Rule 12(b)(6) for failure to state a claim for which relief can be granted.  Defendant's Motion does not seek dismissal of the retaliation or constructive discharge causes of action.

**II.     LEGAL STANDARD**

   **A.  Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim based on the lack of subject-matter jurisdiction.  While the defendant is the moving party in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction.  Consequently, "the plaintiff bears the burden of proving that the case is properly in federal court." *Wright v. Incline Vill. Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1198 (D. Nev. 2009) (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)).  A motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) may take one of two forms. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  It may be a "facial" challenge or it may be a "factual" challenge. *Id.*  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v.*

1  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "[I]n a factual attack, the challenger disputes the
2  truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*
3    If the movant's challenge is a facial one, then the "court must consider the allegations of
4  the complaint to be true and construe them in the light most favorable to the plaintiff." *Nevada ex*
5  *rel. Colo. River Comm'n of Nev. v. Pioneer Cos.*, 245 F. Supp. 2d 1120, 1124 (D. Nev. 2003)
6  (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989)).  If the attack is factual,
7  however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of
8  disputed material facts will not preclude the trail court from evaluating for itself the merits of
9  jurisdictional claims." *Thornhill Publ'g Co.*, 594 F.2d at 733 (quoting *Mortensen v. First Fed.*
10 *Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  The plaintiff has the "burden of
11 establishing that the court, in fact, possesses subject-matter jurisdiction" by present[ing]
12 affidavits or any other evidence necessary." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th
13 Cir. 1989).  Indeed, the district court is "free to hear evidence regarding jurisdiction and to rule
14 on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United*
15 *States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co.*, 594 F.2d at 733).
16    **B. Rule 12(b)(6)**
17    The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the
18 legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The issue
19 is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer
20 evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)
21 (quotations omitted).  To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed
22 factual allegations, but it must plead "enough facts to state a claim to relief that is plausible on its
23 face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell*
24

4

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Even though a complaint does not need "detailed factual allegations" to pass Rule 12(b)(6) muster, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**III.    DISCUSSION**

**A.  First & Second Causes of Action – Sex & Sexual-Orientation Discrimination**

Defendant's challenge to the Court's subject-matter jurisdiction in this case is a factual one.  Defendant claims that Plaintiff failed to exhaust administrative remedies prior to filing this action and that even if her claims were properly exhausted, she failed to timely sue.  Plaintiff argues that her filing of the 2010 EEO complaints together with the 2012 complaint demonstrates that she complied with the statutory requirements.

Federal employees, like private employees, are to be "free from any discrimination based on race, color, religion, sex, or national origin" pursuant to Title VII. 42 U.S.C. § 2000e-16(a). To establish subject-matter jurisdiction over a Title VII claim, the plaintiff must "exhaust her administrative remedies." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). Federal regulation requires that federal employees "who believe they have been discriminated

5

1  against" must consult with a counselor within forty-five days of the alleged discrimination "in
2  order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). If counseling does not
3  resolve the issue, the "aggrieved person" is informed of her "right to file a discrimination
4  complaint." *Id.* § 1614.105(d).

5  The EEO complaint must be filed with the agency that allegedly discriminated against the
6  "complainant." *Id.* § 1614.106(a). The agency then has the responsibility to "acknowledge
7  receipt of [the] complaint" and advise the complainant that she "has the right to appeal the final
8  action on or dismissal of a complaint" and that an investigation must be conducted within 180
9  days of the filing of the complaint. *Id.* § 1614.106(e). Final agency action may occur following
10 the decision of an administrative judge, or it may be the result of the agency's own final
11 decision. *Id.* § 1614.110. If the final action is not the result of an administrative judge's ruling,
12 then the final decision must "consist of all findings by the agency on the merits of each issue in
13 the complaint" together with the rationale for dismissing any claims, or the appropriate remedies
14 and relief if discrimination is found. *Id.* § 1614.110(b). "The final agency action shall contain
15 notice of . . . the right to file a civil action in federal district court . . . and the applicable time
16 limits for appeals and lawsuits." *Id.*

17 After receipt of the final agency action, the complainant has ninety days to file a civil
18 action in an appropriate United States District Court. 42 U.S.C. § 2000e-16(c); 29 C.F.R.
19 § 1614.407(a). Alternatively, the complainant may file a civil action after 180 days if the agency
20 has failed "to take final action on his complaint." 42 U.S.C. § 2000e-16(c); 29 C.F.R.
21 § 1614.407(b). These administrative requirements are a pre-requisite to filing a suit and
22 dismissal may be appropriate if the complainant turned plaintiff has failed to follow them. *See*
23 *Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416 (9th Cir. 1994) (finding plaintiff's failure to
24

contact a counselor within the required time frame potentially "fatal" to the federal employee's discrimination claim).

In this case, the Court finds that the Complaint inadequately pleads compliance with the required administrative procedures for Plaintiff's claims based on sex and sexual-orientation discrimination. The Complaint states that Plaintiff "filed her EEO Complaint August 27, 2012, after an initial investigation and a supplemental investigation with a Final Agency Decision . . . issued [on] December 17, 2013." (Compl. ¶ 7). "Plaintiff received a copy of the Final Agency Decision (for Agency Case No.: 200P-0593-201210397) . . . on January 02, 2014. Plaintiff claims that she filed the lawsuit within the time allotted by statute after her receipt of the final agency action, "[i]n fulfillment of all jurisdictional requirements." (*Id.* ¶ 8). And indeed, the Complaint was filed in this case on January 27, 2014. (ECF No. 1).

However, the only claims raised in the 2012 EEO complaint and addressed by the final agency action issued on December 17, 2013 are those for retaliation and constructive discharge. (*See* Final Agency Action 2, ECF No. 1-1). The Complaint provides no facts regarding the exhaustion and timely filing of the claims for sex and sexual-orientation discrimination. These claims were presumably included in the EEO complaints filed back in 2010, and Plaintiff argues that the final agency action on the 2012 complaint "refers to the sexual discrimination and sexual orientation matters of 2010." (Resp. 7). Yet it is clear from the analysis contained in the final agency action that the agency was not evaluating the merits of the 2010 discrimination claims. Rather, the agency merely noted that Plaintiff's reprisal theory of discrimination was based on her previous EEO complaints and that the constructive discharge claim was premised on Plaintiff's fear of being near her harasser's again. (Final Agency Action 7–8). There is no evidence whatsoever that the agency, or even Plaintiff herself, considered the 2012 complaint as

realleging the discrimination claims Plaintiff reported two years earlier. (*See* 2012 EEO Complaint, ECF No. 20, Ex. A (containing no allegations of sex discrimination)).

Accordingly, the question is whether Plaintiff followed the administrative procedures outlined above as to the discrimination claims not affirmatively alleged in the 2012 EEO complaint. The Complaint indicates that Plaintiff filed an EEO complaint in 2010, (Compl. ¶ 21), but it is silent as to the actual disposition of that complaint. It is also silent as to whether the 2010 complaint was timely filed with the agency. It likewise does not indicate when Plaintiff received the final agency action thereby triggering the ninety-day filing period. Nevertheless, these deficiencies do not necessarily strip the Court of subject-matter jurisdiction.

As this Court has noted elsewhere, although filing a complaint of discrimination with the agency "is a jurisdictional prerequisite to a Title VII suit, 'filing a *timely* [complaint] . . . is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Brophy v. Day & Zimmerman Hawthorne Corp.*, 799 F. Supp. 2d 1185, 1192 (D. Nev. 2011) (Jones, J.) (quoting *Zipes v. TWA*, 455 U.S. 385, 393 (1982)). The requirement that a civil action be filed within ninety days from the complainant's receipt of the final agency action is also construed in this manner. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (holding that the requirement to file a civil action within thirty days (now ninety days) of receipt of notice of final agency action pursuant to 42 U.S.C. § 2000e-16(c) is subject to the "rebuttable presumption of equitable tolling").

Assuming that there was a final agency action taken in regards to the 2010 complaints, as is required by law, 29 C.F.R. § 1614.110, Plaintiff had ninety days from her receipt of that action to challenge the agency's decision through a civil suit in federal court, *id.* § 1614.407(a). It is clear that this did not happen since Plaintiff did not file any lawsuit until January 2014. The

claims for sex and sexual-orientation discrimination are therefore untimely.[1] *See Wiley v. Johnson*, 436 F. Supp. 2d 91, 95–96 (D.D.C. 2006) ("Courts apply the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one day.").

Plaintiff has provided no explanation for why she did not challenge the agency's disposition of her 2010 EEO complaints within the ninety-day limitation period. In fact, it appears that Plaintiff would have never filed a lawsuit had the VA not required that the respiratory therapists transfer to the new facility. The Court therefore finds that Plaintiff has not demonstrated any reason why the ninety-day period should be waived, estopped, or tolled. *See Irwin*, 498 U.S. at 96 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). As such, Plaintiff's attempt to raise these discrimination claims as part of this lawsuit is untimely, and the Court finds that they should be dismissed with prejudice.

**B. Third Cause of Action – Disability Discrimination**

Defendant contends that Plaintiff has failed to demonstrate that she exhausted the administrative remedies to her disability claim. Plaintiff responds that it was considered as part

---

[1] Defendant argues that a claim for sexual-orientation discrimination is not actionable under Title VII. Defendant may be correct. The Ninth Circuit has held that "an employee's sexual orientation is irrelevant for purposes of Title VII." *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1063 (9th Cir. 2002) (en banc). Title VII "neither provides nor precludes a cause of action for sexual harassment. That the harasser is, or may be, motivated by hostility based on sexual orientation is similarly irrelevant, and neither provides nor precludes a cause of action." *Id.* at 1063–64. The relevant inquiry is whether "the harasser [has] engaged in severe or pervasive unwelcome physical conduct of a sexual nature." *Id.* at 1064. Regardless of her sexual orientation, it is unclear from the Complaint whether Plaintiff suffered "physical conduct of a sexual nature," and it appears that Plaintiff's sexual-orientation claim may actually be duplicative of her cause of action based on sex discrimination. *See id.* (holding that plaintiff, who was homosexual, presented a Title VII claim not because of his sexual orientation but because he was treated differently "based on sex"). In any event, this is a moot point due to Plaintiff's failure to timely file suit for any of the claims alleged in the 2010 EEO complaints.

1  of the 2012 EEO complaint and as such she properly complied with the administrative

2  requirements before filing suit.

3  Plaintiff asserts the ADA as the applicable statute giving rise to her disability claim. (*See*

4  Compl. ¶ 79). This is incorrect. The ADA does not apply to federal employees. *See* 42 U.S.C.

5  § 12111(5)(B)(i) (excluding the "United States" as an "employer" under the ADA). Federal

6  employees are instead protected from disability discrimination under the Rehabilitation Act, 29

7  U.S.C. § 701 *et seq*. Accordingly, the ADA cannot offer Plaintiff the relief that she seeks. *See* 29

8  U.S.C. § 794a(a)(1) (providing cause of action for discrimination).

9  The Rehabilitation Act incorporates the same "requirement of exhaustion of

10 administrative remedies applicable to federal employees under Title VII." *Boyd v. U.S. Postal*

11 *Service*, 752 F.2d 410, 412 (9th Cir. 1985). It appears that Plaintiff's claim for disability

12 discrimination was raised, at least implicitly, in her 2012 EEO complaint. (*See* 2012 EEO

13 Complaint (discussing fear and anxiety as the reason why she could not return to work)). Since

14 subject-matter jurisdiction "extends to all claims of discrimination that fall within the scope of

15 the [agency's] actual investigation or an [agency] investigation that could reasonably be expected

16 to grow out of the charge," *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003),

17 the Court finds that Plaintiff adequately exhausted her administrative remedies as to this claim.

18 Therefore, although the Court must dismiss the disability claim because it is raised under a

19 statute that offers Plaintiff no relief because of her former position as a federal employee, *Rivera*

20 *v. Heyman*, 127 F.3d 101, 103 (2d Cir. 1998), the Court invites Plaintiff to amend her complaint

21 to cure this deficiency and plead a cause of action under the Rehabilitation Act.

22 ///

23 ///

24

10

**C. Sixth & Tenth Causes of Action – Tort Claims**

Defendant next argues that Plaintiff's causes of action for negligence and intentional infliction of emotional distress must be dismissed because they are federally preempted by the Civil Service Reform Act ("CSRA"). Plaintiff fails to provide a substantive rebuttal to this argument, instead claiming that the VA's "utter disregard of civil rights and the I can do whatever cause I'm above the law and I am the law attitude . . . is so disheartening and compelling that the claims for negligent hiring and training as well as intentional infliction of emotional distress are valid claims herein." (Resp. 18). This rebuttal is all pathos and no logos. The VA's conduct, regardless of how deplorable, cannot undo a preemptive statutory scheme.

The CSRA establishes a uniform framework for evaluating adverse personnel actions against federal employees. *United States v. Fausto*, 484 U.S. 439, 443–44 (1988). "It describes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Id.* "The CSRA creates a 'remedial scheme through which federal employees can challenge their supervisors' prohibited personnel practices.'" *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) (quoting *Orsay v. Dep't of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002)).

"If the challenged conduct falls within the scope of the CSRA's prohibited personnel practices, then the CSRA's administrative procedures are the employee's only remedy." *Id.* (quotations and citation omitted). "The CSRA's remedial scheme is both exclusive and preemptive because 'permitting FTCA claims to supplant the CSRA's remedial scheme' would defeat Congress' purpose of creating 'a single system of procedures and remedies, subject to judicial review.'" *Id.* (quoting *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991)). Thus,

"where Congress has provided a process for processing prohibited personnel practices, other potential employee remedies are preempted." *Id.*

The CSRA defines "prohibited personnel practices" as any "personnel action" taken for "an improper motive by someone who has authority to take personnel actions." *Mahtesian v. Lee*, 406 F.3d 1131, 1134 (9th Cir. 2005) (citing 5 U.S.C. § 2302(b)). This encompasses "any . . . significant change in . . . working conditions" that arises from discrimination. 5 U.S.C. §§ 2302(a)(2), 2302(b). The VA's attempt to transfer Plaintiff to a new facility certainly qualifies as a significant change in working conditions, and Plaintiff alleges that the decision to not allow her to work elsewhere was based on discriminatory purposes. (*See* Compl. ¶¶ 43–46). Therefore, the CSRA preempts the remaining tort claims, and Plaintiff was required to seek relief thereunder. *See Mangano*, 529 F.3d at 1247 (holding that plaintiff's claim for intentional infliction of emotion distress fell under the CSRA).

But even if the CSRA did not apply to Plaintiff's tort claims, the Court would still be required to dismiss them for lack of jurisdiction. The Federal Tort Claims Act ("FTCA") is the proper procedural vehicle for bringing tort claims against federal employees acting within the scope of their employment. *United States v. Smith*, 499 U.S. 160, 165–66 (1991) (noting that the FTCA is the exclusive remedy for tortious conduct); *see also* 28 U.S.C. § 2674. The FTCA requires that a plaintiff exhaust administrative remedies before filing an action in federal court by presenting the claim to the appropriate federal agency. 28 U.S.C. § 2675(a). There is no indication that Plaintiff has submitted her remaining tort claims to any agency; instead, it appears that she is raising them here for the first time. (*See* Romaneski Decl. ¶¶ 2–3, ECF No. 18-1). Accordingly, to the extent that Plaintiff's sixth and tenth causes of action are not preempted by the CSRA, they are dismissed for Plaintiff's failure to exhaust administrative remedies. Since

this cannot be cured by amendment, the dismissal is with prejudice. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion for Partial Dismissal (ECF No. 18) is GRANTED. Plaintiff is granted leave to amend her cause of action for disability discrimination within twenty-one (21) days from the entry of this Order, or this claim will be dismissed with prejudice. The case will proceed on Plaintiff's seventh and eighth causes of action for retaliation and constructive discharge.

IT IS SO ORDERED.

Dated this 7th day of May, 2015.

_____
ROBERT C. JONES
United States District Judge