1
2
3
4

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

5
6
7
8
9
10
11

SHOLANDA MCGILL,

          Plaintiff,

   vs.

ROBERT A. MCDONALD, Secretary of
Veterans Affairs,

          Defendant.

2:14-cv-00137-RCJ-VCF

**ORDER**

12      This case arises from the Department of Veterans Affairs's ("the VA") alleged violation

13  of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act

14  ("ADA"), as well as various state tort laws. Pending before the Court is a Motion for Summary

15  Judgment (ECF No. 43) filed by Defendant Robert A. McDonald, Secretary of Veterans Affairs.

16  For the reasons contained herein, the motion is granted.

17  **I.      FACTS AND PROCEDURAL HISTORY**

18      Plaintiff Sholanda McGill is a homosexual African-American woman who began

19  employment with the VA on November 22, 2008. (Am. Compl. ¶¶ 12–13, ECF No. 28).

20  Plaintiff has been diagnosed with fibromyalgia, IBS, PTSD, anxiety, and depression. (*Id.* ¶ 20;

21  Pl.'s Dep., 14, ECF No. 43-2). She worked as a respiratory therapist at the VA's hospital in

22  Clark County, Nevada.  (Am. Compl. ¶¶ 11, 14). In 2010, Plaintiff filed a complaint with the

23  union, and she filed an Equal Employment Opportunity ("EEO") complaint with the VA

24

claiming that two male coworkers were subjecting her to severe physical and verbal harassment based on her sexual orientation. (*Id.* ¶¶ 18–19). Because of the harassment, she suffered from depression, nausea, headaches, stress, fatigue, and nightmares. (*Id.* ¶ 20; Pl.'s Dep., 14–15). The VA opened an investigation into Plaintiff's claims and temporarily moved Plaintiff to an outpatient facility away from the coworkers who were harassing her. (*Id.* at 8; Am. Compl. ¶ 25). In her new position, Plaintiff worked as a respiratory therapist training veterans how to use respiratory equipment, such as continuous positive airway pressure ("CPAP") equipment. (Pl.'s Dep., 11–12). Plaintiff had received training to work in inpatient care, which her prior position at the hospital involved, but she was not trained to work in outpatient care. (*Id.*). Once the VA's investigation was complete, Plaintiff's temporary position became permanent along with a lower pay grade. (*Id.* ¶¶ 22–23).

In July 2012, Plaintiff received an email informing her that she was required to attend a walk-through of a new VA facility where the outpatient respiratory therapists would be relocated. (*Id.* ¶ 26; Pl's Dep., 16–18). Plaintiff alleges that Defendant informed her that the harassers "would be transferring to [the] new hospital facility in the pulmonary department; the same department of the Plaintiff." (Admis. No. 6, ECF No. 43-4, at 4). Plaintiff informed her supervisors and the VA's local human resources office about her fear that the move would return her to a hostile working environment. (Am. Compl. ¶ 28). Plaintiff alleges that Defendant failed to address her concerns and instead demanded that she report to work at the new facility or be reported AWOL. (*Id.* ¶ 29; E-mail, 111, ECF No. 44). Despite three separate attempts to report to the new facility, Plaintiff could not overcome the "physical[] and mental[] afflict[ion]" that she experienced at the thought of working in the same building with her former harassers. (Am. Compl. ¶¶ 30–31). This distress allegedly caused her existing conditions to worsen. (*Id.* ¶ 35).

2

1      Plaintiff filed another EEO and union complaint and proposed that Defendant create an

2  "Education CPAP Clinic" in one of its primary care clinics that would allow Plaintiff to continue

3  her outpatient duties at the same pay rate and at a facility apart from the other respiratory

4  therapists. (*See* Proposal, 54, ECF No. 43-2; Pl.'s Decl., ¶ 20, ECF No. 44, at 108). The parties

5  failed to reach a mutually agreeable solution, and on December 13, 2012, Plaintiff resigned.

6  (Am. Compl. ¶¶ 41–42; Pl.'s Dep., 45).  Plaintiff believes that Defendant subjected her to

7  disparate treatment due to her sex, sexual orientation, disability, and EEO complaints. (Am.

8  Compl. ¶ 43).

9      Plaintiff's Complaint contained ten causes of action. She voluntarily withdrew three of

10  them, (Resp. 16, ECF No. 20), and the Court dismissed four others with prejudice and one with

11  leave to amend, (*see* Order, ECF No. 25). Plaintiff filed an Amended Complaint and Defendant

12  answered. (*See* ECF Nos. 28, 32). Defendant now moves for summary judgment on the three

13  remaining claims: (1) disability discrimination; (2) retaliation; and (3) constructive discharge.

14  **II.    LEGAL STANDARDS**

15      A court must grant summary judgment when "the movant shows that there is no genuine

16  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

17  Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v.*

18  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there

19  is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A

20  principal purpose of summary judgment is "to isolate and dispose of factually unsupported

21  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

22      In determining summary judgment, a court uses a burden-shifting scheme. The moving

23  party must first satisfy its initial burden. "When the party moving for summary judgment would

24

3

bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

4

U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III.   ANALYSIS

### A.   Disability Discrimination

#### 1.   Legal Standards

The Rehabilitation Act, 29 U.S.C. § 701 *et seq*, prohibits discrimination against any "otherwise qualified individual with a disability." § 794(a); *see also* § 794a(a)(1) (providing a cause of action for employment discrimination). The standards used under the Americans with Disabilities Act ("ADA") apply to a claim of employment discrimination under the Rehabilitation Act. § 791(f). To evaluate an employment discrimination claim, the courts use the *McDonnell Douglas* burden-shifting framework. *See Mustafa v. Clark Co. Sch. Dist.*, 157 F.3d 1169, 1174–77 (9th Cir. 1998); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–52 (2003) (applying the *McDonnell Douglas* standard to an ADA claim on summary judgment). Under this framework,

> the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.

*Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).

5

1    To establish a prima facie case of failure to accommodate, Plaintiff must show that "'(1)

2    she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform

3    the essential functions of the job with reasonable accommodation; and (3) she suffered an

4    adverse employment action because of her disability.'" *Samper v. Providence St. Vincent Med.*

5    *Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th

6    Cir. 2003) (alterations omitted)).

7            2.      Analysis

8            The parties do not dispute that Plaintiff is disabled within the meaning of the ADA;

9    instead, Defendant argues that Plaintiff cannot establish a prima facie case based on factors two

10   and three.

11           i.      Qualified Individual

12           Defendant argues that Plaintiff is not a qualified individual because her request for

13   accommodation is not reasonable, and even if Defendant attempted to make the requested

14   accommodation Plaintiff would not be able to perform the essential functions of the job. To

15   determine whether an individual is qualified, "[t]he court first examines whether the individual

16   satisfies the requisite skill, experience, education and other job-related requirements of the

17   position. The court then considers whether the individual can perform the essential functions . . .

18   with or without a reasonable accommodation." *Samper*, 675 F.3d at 1237 (quoting *Bates v.*

19   *United Parcel Svc., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc)). The employer has the

20   burden of establishing what job functions are essential. *Id.*

21           Defendant has adduced evidence establishing that the essential functions of Plaintiff's job

22   include, inter alia, the following:

23           •    Performing routine maintenance of respiratory therapy equipment;

24

- Operating all pulmonary function testing and arterial blood gas equipment for use at the HASNHS, Ambulatory Care Center, and Pulmonary Clinic;
- Performing initial setup of CPAP and bi-level positive airway pressure (BiPAP) equipment, and reviewing the use, functions, upkeep and maintenance of the equipment with veterans;
- Doing timely entry of issued equipment;
- Working closely with the Prosthetics Department related to CPAP/BiPAP equipment.

(*See* Decl. Tareq Jamil ¶ 9, ECF No. 43-6, at 3; Doc., 8, ECF No. 43-6). Plaintiff does not dispute that these functions are the essential functions of her position.

Defendant does not dispute that Plaintiff possesses the requisite skill, experience, education and other requirements of the position. Instead, Defendant argues that no accommodation is reasonable or would allow Plaintiff to perform the essential functions of the position. The employee bears the burden of producing evidence to show that a reasonable accommodation is possible. *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). If she does, then the employer must produce rebuttal evidence to show that the requested accommodation is not reasonable. *Id.*

Plaintiff's requested accommodation was that Defendant create an "Education CPAP Clinic" in one of its primary care clinics that would allow Plaintiff to continue her outpatient duties at the same pay rate and at a facility apart from the other respiratory therapists. (*See* Proposal, 54, ECF No. 43-2; Pl.'s Decl., ¶ 20, ECF No. 44, at 108; Pl's. Dep., 20–21, 30). Plaintiff has presented no evidence to show that her requested accommodation was possible. Instead, she presents evidence that Defendant told her that her "proposed clinic does not align well with [the] mission of providing the best care in pulmonary medicine to our nation's veterans." (E-mail, 111, ECF No. 44). Plaintiff presents no evidence that Defendant could have offered her a respiratory therapist position at an existing outpatient clinic. She presents the

7

testimony of Gregory Orlando Wolff, a human resources officer, who said that it is *possible* that respiratory therapists could be working at clinics outside the hospital, (Dep. Wolff, 71:1-8, ECF No. 44, at 102), but Wolff's testimony does not assert either way whether respiratory therapists work at the outside clinics.

Defendant presents evidence to show that it had no ability to offer Plaintiff an outpatient respiratory therapist position. Milan S. Parekh, Deputy Chief of Staff of Medicine at VASNHS, testified that all the employees of the Outpatient Pulmonary Clinic moved to the new facility and that "no certified respiratory therapists remained in outpatient clinics outside of the new medical center." (Decl. Parekh, ¶¶ 12, 16, ECF No. 43-1; *see also* Pl.'s Dep., 16–18). Plaintiff also states that she is not aware of any openings for respiratory therapists at other clinics, and she does not know whether respiratory therapists worked at the other clinics. (Pl.'s Dep., 21-22, 44).

Tareq Jamil, Chief of the Pulmonary Section at VASNHS, also testifies that Plaintiff's proposal "would not work outside of the pulmonary clinic because such a position cannot be done remotely." (Decl. Tareq Jamil, ¶ 10, ECF No. 43-6). Specifically, a respiratory therapist must have access to the pulmonary clinic where large equipment and necessary supplies are housed, and a therapist's work in training veterans to use CPAP equipment must be done with physician oversight. (*Id.*). In other words, "[Plaintiff's] position as a certified respiratory therapist depends on being part of the pulmonary clinic, which was moving to the new medical center." (*Id.* ¶ 8). Thus, it was not possible for Defendant to allow Plaintiff to work as a respiratory therapist outside the new facility because all the respiratory therapists and the necessary equipment and resources would be at the new facility. *See Samper*, 675 F.3d at 1237 (finding that one who is not able to be at work cannot be a "qualified individual" for jobs

requiring an employee to be on site, such as jobs that "require the employee to work with items and equipment that are on site").

Furthermore, "the ADA does not impose a duty to create a new position to accommodate a disabled employee." *Wellington v. Lyon Cty. Sch. Dist.*, 187 F.3d 1150, 1155 (9th Cir. 1999). It would be unreasonable and create an undue harship to require Defendant to create a new position to accommodate Plaintiff's disability, and especially an entire new clinic as she has requested. Defendant proposed that Plaintiff fill a different position with different duties outside the new facility, but she rejected the proposal because it was "a G5 demotion to a clerical position." (Pl's. Decl. ¶ 18, ECF No. 44, at 108). Plaintiff's requested accommodation is not reasonable because it is not possible. Thus, she is not a "qualified individual" within the meaning of the ADA. Plaintiff has not shown that any genuine issue of material fact exists as to this conclusion.

Plaintiff argues that Defendant failed to engage in an "interactive process" to consider her requested accommodation. If an employee is disabled, the employer has "a duty to engage in an interactive process . . . 'to clarify what the individual needs and identify the appropriate accommodation.'" *Vinson*, 288 F.3d at 1154–55 (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000)). "An employer who fails to engage in such an interactive process in good faith may incur liability 'if a reasonable accommodation would have been possible.'" *Id.* (quoting *Barnett*, 228 F.3d at 1116).

The evidence shows that representatives for Defendant met with Plaintiff on August 9, 2012 to discuss her proposal to create a new outpatient clinic and her concerns regarding the new facility. (*See* Decl. Parekh ¶ 11; Pl.'s Dep., 31). This meeting is evidence that an "interactive process" addressing Plaintiff's concerns occurred, and even if it did not occur, Defendant has

1   established that the reasonable accommodation Plaintiff requested was not possible; thus,

2   Defendant cannot be liable for failing to satisfy this requirement.

3        Plaintiff has failed to establish a prima facie case of failure to accommodate. The Court

4   grants the motion for summary judgment as to this claim in Defendant's favor.

5        **B.    Retaliation**

6        1.    Legal Standards

7        The Civil Rights Act prohibits employers from discriminating against an employee for

8   invoking her rights under federal discrimination laws. 42 U.S.C. § 2000e-3. To establish a prima

9   facie case of retaliation, a plaintiff "must establish that [1] he undertook a protected activity

10  under Title VII, [2] his employer subjected him to an adverse employment action, and [3] there is

11  a causal link between those two events." *Vasquez*, 349 F.3d at 646.

12       2.    Analysis

13       Defendant concedes that Plaintiff undertook a protected activity by filing EEO

14  complaints, but Defendant argues that Plaintiff cannot establish the second and third elements of

15  a prima facie case.

16       Plaintiff alleges that Defendant retaliated against her by forcing her to return to a hostile

17  work environment, denying her requested accommodation, and constructively discharging her.

18  An action is an adverse employment action "if it is reasonably likely to deter employees from

19  engaging in protected activity." *Id.* at 646. Defendant presents evidence to show that all the

20  employees at the outpatient clinic moved to the new facility and that no respiratory therapists

21  remained in outpatient clinics. (Decl. Parekh, ¶¶ 12, 16, ECF No. 43-1; *see also* Pl's. Dep., 16–

22  18). Plaintiff has presented no evidence to show that Defendant treated her differently than other

23  employees in regard to the move. Requiring an employee to move like all other employees in a

24

clinic would not reasonably deter an employee from filing a complaint of discrimination. Also, denying Plaintiff the accommodation she requested is not an adverse action for purposes of retaliation because Defendant has established that the accommodation was not reasonable. Finally, Plaintiff argues that her constructive discharge is evidence of retaliation because it occurred after her complaints, but she presents no facts to support her argument.

Even if any of Defendant's actions did constitute adverse employment actions, Plaintiff has presented no facts to dispute Defendant's argument that there is no causal link between Plaintiff's protected activity and any of Defendant's actions. She has presented no evidence of any retaliatory motive, or even a possible inference of a retaliatory motive.

Plaintiff has failed to establish a prima facie case of retaliation. The Court grants the motion for summary judgment as to this claim in Defendant's favor.

### C.     Constructive Discharge

1.     Legal Standards

[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.

*Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). "Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury." *Schnidrig v. Columbia Mach.*, *Inc.*, 80 F.3d 1406, 1411 (9th Cir. 1996). Summary judgment is appropriate "where the 'decision to resign was unreasonable as a matter of law.'" *Lawson v. Washington*, 296 F.3d 799, 805 (9th Cir. 2002) (quoting *King v. AC & R Advertising*, 65 F.3d 764, 767 (9th Cir. 1995) (alteration omitted)). To prevail on a claim of constructive discharge, a plaintiff "'must show some aggravating factors, such as a continuous

11

pattern of discriminatory treatment.'" *Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007) (quoting *Schnidrig*, 80 F.3d at 1412).

2.     Analysis

Defendant argues that Plaintiff cannot show that any discriminatory conditions existed at the time of her resignation. Defendant points the Court to *Wallace* which recognizes "the requirement that the intolerable conditions exist at the time of the employee's resignation." 479 F.3d at 627; *see also Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994) ("in order to constitute constructive discharge, harassment must be intolerable *at the time of the employee's resignation*") (emphasis in original) (internal quotations omitted). The evidence shows that Plaintiff's harassers were not harassing her at the time of her resignation because she was working away from them in the outpatient clinic. (Pl's. Dep., 40–41). Also, the harassers did not work at the new facility prior to Plaintiff's resignation. (Decl. Parekh, ¶ 18). However, in *Wallace* the Ninth Circuit found that a jury could have found that constructive discharge occurred when the plaintiff's working conditions had incrementally improved, but the "employer was still willing and able to take continued discriminatory action against [the plaintiff]."[1] 479 F.3d at 627.

Here, no evidence shows that Defendant discriminated against Plaintiff or that Defendant was willing and able to begin discriminating against her. According to Plaintiff, Defendant informed her that the harassers "would be transferring to [the] new hospital facility in the

---

[1] Specifically, the Ninth Circuit found that the jury could have determined that the employer condoned the discriminatory behavior by not taking disciplinary action against the discriminators, *id.*, and the plaintiff's manager had "threatened [the plaintiff] with termination for *any future misconduct*," *id.* at 629 (emphasis in original). The evidence "permitted a reasonable jury to conclude that [the plaintiff's] employment conditions had not sufficiently changed to preclude a constructive discharge claim." *Id.* at 627–28. Further, "the jury could have concluded that [the plaintiff] reasonably feared subsequent transfer to a less desirable post" or to the same division where the discrimination occurred. *Id.* at 628.

1    pulmonary department; the same department of the Plaintiff." (Admis. No. 6, ECF No. 43-4, at

2    4). Thus, if she had begun working at the new facility, then she might have faced an immediate

3    threat of renewed harassment, which could have created intolerable working conditions.

4    However, *Wallace* and the standards for a claim of constructive discharge require the existence

5    of discrimination, not just difficult working conditions.

6         As described above, Plaintiff has failed to present any evidence that Defendant

7    discriminated against her based on her disability or that Defendant retaliated against her.

8    Although Plaintiff presents evidence of harassment by her co-workers, she presents no evidence

9    that the allegedly intolerable conditions created by the harassment were the "result of

10   discrimination" by Defendant, her employer. *Poland*, 494 F.3d at 1184. And even if Defendant

11   did discriminate against Plaintiff in some way, she has not shown that "'a continuous pattern of

12   discriminatory treatment'" or other aggravating factors related to discrimination existed.

13   *Wallace*, 479 F.3d at 626 (quoting *Schnidrig*, 80 F.3d at 1412). Although Plaintiff alleges that

14   Defendant failed to adequately address the harassment against her, she has presented no evidence

15   of discriminatory motive or intent in Defendant's actions in the discipline of the harassers or in

16   moving Plaintiff to the outpatient facility. Plaintiff certainly faced a difficult choice of either

17   accepting a clerical position with a two-step demotion, (*see* Pl.'s Decl. ¶ 18), or working at the

18   new facility where her former harassers might also be working, but these working conditions

19   were not "so intolerable *and* discriminatory as to justify a reasonable employee's decision to

20   resign." *Schnidrig*, 80 F.3d at 1411 (emphasis added).

21        Because Plaintiff has failed to present any evidence of discrimination by Defendant, her

22   decision to resign in the context of a constructive discharge claim "'was unreasonable as a matter

23   of law,'" *Lawson*, 296 F.3d at 805 (quoting *King*, 65 F.3d at 767), and, thus, summary judgment

24

is appropriate. Defendant has shown that Plaintiff cannot meet her burden to prove a claim of constructive discharge. The Court grants the motion for summary judgment as to this claim.

### CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 43) is GRANTED.

IT IS SO ORDERED.

Dated this 22nd day of February, 2017.

_____
ROBERT C. JONES
United States District Judge